v. James Blair, No. 5, 160469. Counsel ready? Yes, Your Honor. Thank you. Good morning, Your Honor. Stephen Williams for the defendant, appellate James Blair. The 6-9 case involves possession with intent to distribute marijuana and possession of two oxycodone pills. Much of the cases and what we're dealing with primarily is the issue of whether or not the two trials at issue and the two charges at issue, in one case here, possession with intent to distribute versus an armed robbery and aggravated assault involve the same comprehensive transaction. You have four factors primarily that are to be relied upon in making this determination. Proximity in time, evidence linking the two offenses, identity of evidence, and a common method of perpetrating the offense. As to all of these factors, Your Honor, we would concede that there is a proximity in location only to the extent that the drugs that were found in Mr. Blair's car were found in Mr. Blair's car. And in terms of the time frame, the point in time in which the drugs were found in his car was after it had been towed. There really isn't any proximity in time, and it is incidental in any event to the commission of these offenses. There isn't any evidence as to when the drugs arrived in Mr. Blair's car. There isn't any evidence that the drugs were there at the time that he committed or has allegedly committed the robberies and aggravated assault. There isn't any evidence linking, and this is the primary argument that Mr. Blair relies upon, this linkage between the robbery and the aggravated assaults. While it is true that there was evidence that Mr. Blair or whoever the perpetrator was did demand drugs, and in particular marijuana, the point in this case is if that is to be used, and certainly the State argues that that was helpful evidence, it's in their brief to their case, that the fact that there was evidence that both asked for marijuana at the time he was committing this robbery and that there was marijuana later discovered in his car, that those two things both link the offense and are both evidence of the other offense. And the reality is there is nothing linking those two because all of the witnesses say that he didn't take any marijuana in the armed robbery. So what it boils down to, unlike the cases that are relied upon by the State, what it boils down to is the use of other crimes to create an opportunity for the perpetrator to use marijuana in his car. What they're relying on is propensity. They haven't argued propensity. They're ignoring the issue of propensity under 404B, but that is exactly what it is. The same, the reverse is also true. But in this case, the issue is what is the jury when it comes to whether or not there is then Mr. Blair is guilty of possession with intent to distribute marijuana if, in addition to hearing evidence of the fact that he had committed an armed robbery, evidence of an aggravated assault, and so hearing all of this evidence of bad character also is hearing evidence that the purpose behind committing this armed robbery was to acquire marijuana. Just the sort of person who is going to possess with intent to deliver marijuana that he's charged with in the drug case. Had there been evidence linking the marijuana that was found in his car to the robbery, this would be an entirely different case. And obviously, we would have a much weaker argument under those circumstances because it would marry up with the cases that are relied upon by the State. And there's three primary cases that are relied upon by the State relating to the Joinder issue. There's the Fleming case from the 1st District, the Heitch case from this district, and the Quiros case from the 1st District. In each one of those, when you're examining the evidence itself and the linkage, there was evidence of a continuing crime that linked the crimes. So, for example, in the Fleming case, we had shooting at a police officer after an attempted armed robbery. Police were in pursuit, and they fired at the police. So there's a continuation. There is evidence of flight. And that is what's linking the two crimes. One was linked to the other because the firing at a police officer was necessitated by the robbery. Same thing with the Heitch case. We had the murder of a State police officer. And that happened during a traffic stop. After the traffic stop, the perpetrators pull over an innocent motorist, and they kidnap that person and steal their vehicle. It is an outgrowth of the murder. It is necessitated by the murder. And so for that reason, they were linked. And then finally, with the Quiros case, we had a shooting followed by a car robbery. And that is what's linking the two crimes. So, the car jacking is necessitated by the shooting. It's an outgrowth of it because it's the flight afterwards. No such evidence exists in this case linking these two charged crimes. While the State has argued, well, he fled, there was an accident, and later these drugs were found in his car. But the fact of the Fleming is a fair point. They can argue that evidence, but the cases don't need to be joined and, in fact, shouldn't be joined in order to get into that evidence. What this case is on all fours with, in almost every way, is the Poland case. And while it's an old case, the facts are very similar. We had a robbery, a stolen Cadillac, and then 16 days later, the defendant in that case is arrested in the same Cadillac, and there's drugs in his car. Absolutely no evidence linking those two crimes. Well, there was a 16-day difference there. How many hours difference was there in this one from the time he fled the scene of the robbery to the time they located his car? Sure. I agree, Your Honor. However, from the perspective of what was analyzed by the court, the time frame had nothing to do with the fact that the marijuana that was in his car was unrelated in any way to the robbery, just like the marijuana in this situation. So, for example, in the Poland case, the fact that he was driving the Cadillac where he was found to be in possession of marijuana, that certainly was evidence of the fact that he had robbed someone and taken their Cadillac. And you could get into that in the robbery case without mentioning in any way the fact that there was also marijuana on him when he was arrested. Similarly, in this case, even though there is less time, concede that. But if you want to get into the fact that he had fled and had been seen nearby driving at a high rate of speed, you can get into that in the evidence that you're presenting for the armed robbery and the aggravated assault without mentioning in any way that hours later, after his car was discovered and towed, there was marijuana found in it. There's no need to get into the marijuana to address all of the facts that are relevant and not indicative of propensity that are attached when combining the two cases. And so, in this case, because they're finding marijuana in his car, what they want is to be able to introduce evidence of propensity, his propensity exhibited by his demand for marijuana in the robbery case. And furthermore, his bad character exhibited by the fact that he would be willing to engage in an armed robbery and an aggravated assault, just the kind of person we should find guilty of possession with intent to marijuana or possession with intent to distribute marijuana. And so that is how, while I concede the timeframe is different, really that issue, as it relates to these two cases, we would propose is not actually a material difference in the cases and that this really is on all fours. In addition, Your Honors, we are challenging, in both cases, failure to disclose evidence concerning Spencer Bagwell and the fact that he had a case pending. He had been told everything is going to be okay. And also, his attorney had been told there will be no negotiations until the case against Mr. Blair is over with. That gave Mr. Blair a reason to lie, to change his story, which he did. Thank you, Your Honors. Thank you, Counsel. You'll have an opportunity for rebuttal. May it please the Court. Counsel, my name is Sharon Shanahan and I represent the people of the state of Illinois. Just as a boy, as a resident of Union County, I'm really glad to see you here. So, as counsel for the defendant noted, the facts in these cases are quite similar. The issues are pretty much identical. We've got this case, then we're going to go right into the armed robbery case. So, with the Court's permission, obviously, I'm willing to discuss any of the issues in any of the — in either of the cases. But absent those specific questions, I thought that I'd just take this opportunity to discuss the Joinder question and then the facts specific to prejudice as far as the drug case. Then in the next timeframe, we'll discuss the Brady — alleged Brady violation and the facts specific to the armed robbery. So, I've heard quite a bit in the oral argument thus far that the cases didn't need to be joined. They shouldn't be joined. That's not the standard we're looking at here. We're looking at whether the trial court abused its discretion in joining these cases. And I think when you look at the factors that allow Joinder, there is no question that there was not an abuse of discretion in this case. The first factor is proximity in time and location. And even in the case — one of the cases that defendants cites, Pupil v. Walston, although they rejected the judicial efficiency factor, they did say, and here I'm quoting, the first factor, probably the most helpful by far, asks whether the offenses to be joined were close in time and location. Justice Barberos, as you noted in the case that — in Pullen, the case that defendant relies upon so strongly, the case — the crimes were 16 days apart. Now, in this case, obviously, witnesses don't go around when they happen to see something with — you know, check their watch. But the approximate timeframe in this case is that the defendant left his home and headed towards the home of the victims around 530 to 6, something like that. Mr. Durkee saw the defendant's car speeding wildly through his neighborhood. He's — like, he's on the east side of town. It's kind of — that's why I put the map in the briefs, is that you got the crime occurring on the east side of town, Mr. Durkee's on the west side of town, the car's down even farther west. But anyway, he — so we have the — excuse me, the crime being committed, we're going to say after 6. Mr. Durkee sees the car that he very definitely identifies as the car that was later established to be the defendant's, speeding wildly through his neighborhood about 6.30, and then he saw the defendant himself with a backpack on walking back through his neighborhood about 7.45. So they're very close in time. The distance is about nine miles, at least according to Google Maps, which I think this court can take judicial notice of. So if we are looking at the most helpful by far, proximity of time and location, then these cases were properly joined. Common evidence. Counsel for the defendant attempts to distinguish the cases argued by the state by saying, well, in those cases there was flight. Well, there was flight here. I mean, he left the home where the robbery occurred. And again, according to Mr. Durkee, I mean, and another — I'm not going to say that because I'm going to show off my facts there, but there was another witness that saw either the car or the defendant in the neighborhood. But nonetheless, the car was speeding through a residential area, almost to the mailbox. He was — he wanted to get out of there. And there is no doubt that that car was the defendant's car. So there was flight. And the police were not looking for drugs when they found this car, but they were looking for evidence — well, not per se. I shouldn't say that. The defendant came into the victim's home looking for drugs and money. That's what he wanted, drugs and money, in particular marijuana. He was a marijuana user. He had THC in his blood system. I don't think it matters. I think it matters that this is a man who breaks into homes looking for drugs and money and is found minutes later with drugs and money. He had $1,600 in cash — Well, hours later. Pardon me? Hours later, right? In a locked car. Hours later, yes. But the car was locked and it was the defendant's car. And the defendant concedes that the amount of drugs and the way it was distributed lends toward the finding of possession with intent to deliver. So if you've got — here's the connection. You've got somebody that comes into a home looking for marijuana, not this marijuana, but he wants marijuana. He said he wanted, I believe, a pound of marijuana that he thought was in this home. His locked car, which he abandoned, but it was locked, was found to have marijuana in it. So is it this marijuana that matters, or is it the fact that this is a man who tries to steal money and marijuana? Well, that's what propensity is. Well, it can be, but the fact that something can be joined doesn't mean whether you can — and the thing is, this is not propensity evidence, because it would come under one of the exceptions to the propensity rule, because, I mean, our Supreme Court has stated that evidence of other crimes is inadmissible when relevant for any purpose other than to show propensity. And then the rule says prove a material question other than the defendant's propensity to commit the crime charge, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. So whether this — the drug stuff would have come into the — the fact that it did come into the drug trial, it comes in whether they're joined or not. I mean, the prosecutor's not going to sit there and ignore the fact that the car that the defendant fled in had drugs in it. He's going to bring that in, and he can bring that in under the Rule 404. So I don't see that — I don't see the two as mutually exclusive. The fact that to say this was only for propensity, number one, is a misstatement. It comes in under Rule 404. And number two, it goes to the very fact that there's a link in the evidence, and that's what's required. The drugs that were found in the car were an outgrowth. I'm using counsel for the defendant's word, outgrowth of the initial crime. He committed this offense. I mean, he shot somebody. He shot at everybody, except for the one girl that never came out of her apartment. I mean, it misfired one time, so an old boat came out, and he missed one of the people that lived there when he fired. She said she heard it whiz by her ear, but he shot somebody. He didn't get any money. He didn't get — well, I take that back. He did get some money. He got some expensive clothes. And he fled, and he fled fast, and he wrecked his car. I mean, and his car is found. And they — at this time, they know the defendant's involvement. So we'll get back to this one in the next few minutes. Are there any questions? No, not right now. Thank you, Your Honor. So the State has gone to great lengths to explain how horrendous the armed robbery and aggravated assaults and shootings were. I mean, we just heard a recitation of how serious of a crime that was. And if anything, what that illustrates is with that evidence being admitted in the same trial where Mr. Blair is simply charged with possession with intent to distribute marijuana, what is that other than bad character? And secondly, then we have a recitation of exactly what Mr. Blair's complaint is here, which is we want to use evidence of what he was involved in. What he was asking for in the robbery to prove that he possessed marijuana with intent to distribute. And we have set aside the issue of whether — what we've conceded is how it's packaged. That creates an inference of distribution. That's a sufficiency argument. But what they're arguing is propensity. And what the State has now argued for the very first time, Your Honor, is that this would come in anyway under 404B. Now, we raised that in our primary brief. The State ignored it in its response brief. So the argument of the defendant is this would not have come in under 404B, its propensity. That argument was ignored until this morning by the State. So our position would be that it would be waived. But similarly, what exactly is the exception that we would be talking about anyway? The whole reason for putting it in is for propensity. It doesn't show any exception. If you want to say that shows intent, then the exception is swallows, the rule. This is propensity evidence, and it's being argued that it's something else for the first time this morning, and there isn't any reason why. This was an abuse of discretion. That certainly is what the standard is. But to look at it and say that proximity and time and place, which we don't concede in any event, overrides every other factor isn't how it is used, especially in a case like this, where there is such dissimilarity between what the evidence is. And in addition to that, you have the added factor of prejudice. The State cites to the Walston case for that proposition, but Walston went to great lengths to examine the fact that in that case, because we were talking about sex crimes, there was no prejudice, because there you have a statutory exception to 404B that allows cross-introduction of sex crimes if the cases were tried separately anyway. So there was no prejudice by joining the offenses, because it wasn't a 404B violation. There was a statutory exception to a 404B violation. Finally, as it relates to flight, as I explained, our position is certainly evidence of flight is something that can be considered. But evidence of what was found hours later at the impound in the car as it relates to marijuana is not evidence of flight, and it is not an outgrowth of anything having to do with the robbery. What about the fact that the defendant had evidence of using marijuana in his bloodstream during the commission of both incidents, and that he has possession of marijuana in the car with him allegedly, apparently, when he was going to commit the robbery, and then later afterwards when he wrecks his car? And again, with your concession, the proximity in time is pretty close in that regard. Well, certainly that's additional evidence of other bad acts, but the fact that he had it in his system doesn't in any way erase the prejudicial nature of the evidence that he had in his system as evidence of possession. But doesn't it tie together the fact that he's using marijuana, he has possession of marijuana, and he commits a crime while under the influence of marijuana? Our argument is that that has nothing to do with the one has nothing to do with the other. All of that is simply evidence of other bad acts. It all goes to propensity. If, again, getting back to the Pullum case and the facts of this case, if there had been marijuana stolen, we'd be talking about an entirely different situation, just like the evidence of money in the car. But the marijuana is a different story.